J. G. KERN ENTERPRISES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
J.G. Kern Enterprises, Inc. v. Commissioner
Docket No. 37779-86R.
United States Tax Court
T.C. Memo 1987-580; 1987 Tax Ct. Memo LEXIS 583; 54 T.C.M. (CCH) 1143; T.C.M. (RIA) 87580; 9 Employee Benefits Cas. (BNA) 1080; November 23, 1987. Jack M. Schultz and Thomas H. Bergh, for the petitioner. Paul S. Horn, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Petitioner seeks a declaratory judgment pursuant to section 7476[1] that its defined benefit pension plan, *584 as amended, qualifies under section 401(a) for the plan years ending March 31, 1981, 1982, and 1983. The case was submitted under Rule 122 on the basis of the pleadings and the facts set forth in the administrative record, which is incorporated herein by this reference. At the time it filed its petition, petitioner was a Michigan corporation with its principal place of business in Madison Heights, Michigan. Petitioner's taxable year ends on March 31. Petitioner received an extension until September 15, 1981 for filing its 1981 tax return. On March 27, 1981, petitioner adopted a retirement plan known as the Defined Benefit Plan and Trust of J. G Kern Enterprises, Inc. (the plan) with an effective date of April 1, 1980. The plan's year ends on March 31. Petitioner filed Form 5300 (Application for Determination for Defined Benefit Plan), requesting a determination letter as to the tax status of the plan, which was received by respondent on August 10, 1981. All *585 of the information required to complete the form itself was submitted, including numerous references to specific paragraph numbers and pages of the plan. Although called for by line 24 of form 5300, a copy of the plan and trust instrument was not included. Respondent returned the entire request on November 12, 1981 with a covering form letter reading as follows:
J. G. Kern Enterprises, Inc.
32350 Howard Street
Madison Heights, Michigan 48071
Gentlemen: We have received your request identified above for a determination on your plan, and find we need additional information before we can consider it. Please furnish the information asked for in the block checked below: [] Please complete the items circled on the enclosed application and return it with any documents and statements it asks for. We are returning the material you submitted. [] We have enclosed another application form because the application we received from you was on an incorrect form. Please complete and return this application with any documents and statements it asks for. We have also enclosed the material you submitted. [X] Before we can process your application, we must have documents *586 called for on Line 24 of Form 5300. The 270-day period specified in section 7476 of the Internal Revenue Code (relating to declaratory judgments) will not begin until we receive your complete and correct application. Please attach the copy of this letter to your reply to help us identify your file. A self-addressed envelope is enclosed for your convenience. If you have any questions, please contact the person whose name and telephone number are shown above. Thank you for your cooperation. Sincerely yours,
District Director
Enclosures:
[] Application forms (2)
Your submitted material
Copy of this letter Petitioner forwarded the returned material to Edward Phillips (Phillips), its certified public accountant, who gathered all the material requested by respondent and forwarded the same to petitioner's attorney on December 1, 1981. Petitioner's attorney received the documents on December 4, 1981. A notation on Phillips' letter sent to the attorney indicates that the material was forwarded to respondent on December 7, 1981 and a sworn affidavit of the attorney contained in the administrative record states "On that same date [December 7, 1981], *587 I forwarded to the Internal Revenue Service at Detroit, Michigan, a copy of the Edward J. Phillips letter to me of December 1, 1981, the Internal Revenue Service Letter 1012 (DO) (7-77) dated November 12, 1981 (copy enclosed), which had requested the documents, and the ten (1) documents referred to in the Edward J. Phillips letter to me." [2]
In August, 1983, respondent commenced an audit of the plan and determined, on December 14, 1983, that the plan, as adopted, was in violation of several provisions of section 401(a). On December 20, 1983, petitioner amended the plan to correct the violations of section 401. By their terms, the amendments were effective on April 1, 1980. Petitioner filed a new Form 5300, which was received by respondent on January 23, 1984. Additional amendments were made on September 10, 1984. On June 26, 1985, respondent issues a favorable determination letter for the plan years beginning after March 31, 1983. On July 14, 1986, respondent issued a final adverse determination for plan years ending March 31, 1981, 1982 and *588 1983. The plan as originally adopted did not qualify under section 401(a). [3] Because the plan provisions that violated section 401(a) were not triggered by an employee's death or retirement, however, those provisions had not effect on the operation of the plan. [4]
The issue before us is whether the amendments made December 20, 1983 and September 10, 1984 may be given retroactive *589 effect for tax purposes to April 1, 1980, either because they were made within the remedial amendment period -- the period during which amendments will, in general, automatically be given retroactive effect, see section 1.401(b)-1(a), Income Tax Regs. -- or because petitioner exercised reasonable diligence in applying for a determination letter within the meaning of Aero Rental v. Commissioner,64 T.C. 331 (1975). See also Oakton Distributors, Inc. v. Commissioner,73 T.C. 182, 190 (1979). Our decision rests on the assumption that the factual representations in the administrative record are true. Linwood Cemetery Association v. Commissioner,87 T.C. 1314, 1315 (1986); Rule 217(b). The burden of proof is on the taxpayer, based upon the administrative record. 87 T.C. at 1323. Section 401(b) provides [5] that the remedial amendment period ends on the due date of the employer's tax return for the year that the plan was adopted, or such later date as the Secretary of the Treasury prescribes. The *590 remedial amendment period ends 91 days after the issuance of the determination letter or other final disposition of a request for a determination letter, provided that the request was filed by the date of the due date of the employer's return or the last day of the plan's year. Section 1.401(b)-1(d)(3), Income Tax Regs.
*591 Petitioner contends that its August 10, 1981 request for a determination was timely and served to extend the remedial amendment period despite the fact that the request failed to include the plan and trust instruments and was returned by respondent. Respondent contends that by failing to include these documents petitioner did not make a request for a determination letter. We agree with petitioner. We recognize that respondent's procedural rules require that both the proper form and all documents called for by the form be filed for a request for a determination letter to be considered. Section 601.201(o)(3)(iii), Statement of Procedural Rules. Petitioner does not contend that its August 10, 1981 submission contained the documents called for in line 24 of Form 5300, although the entries on that line indicated that they were attached. Pursuant to the provisions of section 601.201(o)(3)(i), Statement of Procedural Rules, respondent, under cover of a form letter dated November 12, 1981, returned the Form 5300 to petitioner as incomplete. Respondent asserts that, because of his action, there was no longer any request for a determination letter pending. We think respondent imparts *592 a clarity to his November 12, 1981 letter and to the procedural rules which does not exist. A careful examination of the letter reveals that at no point does respondent state that, because of his actions, no request was in existence. The letter merely contains statements that "we need additional information before we can consider it," "Before we can process your application, we must have the documents called for on Line 24 of Form 5300," "Please attach the copy of this letter to your reply to help us identify your file" and that the "270-day period specified in section 7476 of the Internal Revenue Code (relating to declaratory judgments) will not begin until we receive your complete and correct application." (Emphasis added.) All of these statements could reasonably have been interpreted by petitioner as indicating that the request was incomplete and needed to be supplemented before respondent could make the requested determination. To be sure, respondent returned the Form 5300 to petitioner and noted that he was doing so in the lower left-hand corner of his November 12, 1981 letter. But this element is not in our opinion sufficient, particularly in *593 light of the other contents of the letter, [6] to support respondent's position that the August 10, 1981 request was no longer pending. Nor do we think that the provisions of section 601.201(o)(3)(i), Statement of Procedural Rules, provide a sufficient basis for sustaining respondent's position. [7] Nowhere is it stated either in this provision or in any of the other provisions of section 601.201(o), Statement of Procedural Rules, or the provisions of section 1.401(b)-1(c) and (d), Income Tax Regs., that a returned request will no longer be considered a request for purposes of complying with the latter provisions. The statement with regard to the application of section 7476(b)(3) should not be read to support such a broad interpretation. Indeed the limited application of such statement could well be read as negating any such effect with respect to other applications of the regulations and procedural rules. *594 [8]
In view of the foregoing, we conclude that the Form 5300 filed by petitioner on August 10, 1981 retained its status as a request for a determination for purposes of the remedial amendment period provision of the regulations. We emphasize that our conclusion is based on the fact that the Form 5300 was fully filled out including specific references to documents which were stated to be attached and on the ambiguities of respondent's November 12, 1981 letter and the applicable regulations *595 and procedural rules. Having concluded that petitioner's August 10, 1981 request remained pending until respondent's determination letter dated July 14, 1986 with the result that the amendments should be given retroactive effect, we need not decide whether petitioner satisfied the due diligence requirements of Aero Rental v. Commissioner, supra. Nevertheless, we think petitioner's actions subsequent to the receipt of respondent's November 12, 1981 letter are not without some significance. It is apparent from the record that petitioner promptly caused to be gathered together the documentary material respondent requested and the affidavit of petitioner's attorney states under oath that such material was mailed to respondent on December 7, 1981 less than one month after respondent's request. That affidavit (the contents of which we assumed to be true for the purpose of this case in the absence of any evidence to the contrary in the administrative record) is sufficient to establish the presumption that such material was delivered to respondent. Mitchell Offset Plate Service, Inc. v. Commissioner,53 T.C. 235, 239-240 (1969). [9] Such a presumption *596 made it incumbent upon respondent to submit evidence that the material was not received but he has not done so. [10]
Under the foregoing circumstances, we think that petitioner has established due diligence in responding to respondent's November 12, 1981 request. Respondent makes much of the fact that petitioner, at no time prior to the audit, made any effort to determine whether respondent had received the material until August, 1983 when the audit began. Aside from the fact that the record herein contains no evidence to support this assertion, we are satisfied that it was not incumbent *597 upon petitioner, under the circumstances, to make such inquiry. Having concluded that petitioner correctly considered that its August 10, 1981 request was still pending, we think that petitioner could properly assume that respondent would have made further inquiry if he received no response to his November 12, 1981 request for documentary material. Perhaps, twenty months was a bit long to wait to make such further inquiry, but we are not inclined to fault petitioner on this score. The long and the short of the matter is that, beyond the technicalities, this case realistically involves a balancing of imperfect action on the part of petitioner against lack of clarity in respondent's communication of the consequences of his letter of November 12, 1981 and his rules and regulations. Given the complexities of the Federal tax laws, particularly with the sections of the Internal Revenue Code and the regulations thereunder dealing with pension and profit sharing plan, we think that, based upon the particular facts and circumstances of this case, the balance is in favor of petitioner. See and compare Corn Belt Hatcheries of Arkansas, Inc. v. Commissioner,52 T.C. 636, 639-640 (1969). *598 [11]
We hold that the plan was qualified within the meaning of section 401(a) during petitioner's taxable years ending March 31, 1981, 1982 and 1983. An appropriate order will be entered.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and applicable to the issue herein, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The administrative record does not establish whether this communication was received by respondent. See p. 10, infra.↩
3. Petitioner alleged in its petition that the plan as originally adopted qualified under sec. 401(a)↩. Petitioner does not argue this point on brief, and in fact states that the sole issue in this case is the effective date of the plan amendments. Also, petitioner's response to respondent's request that we find that the plan did not qualify was to assert that it did qualify because of the remedial amendments. We therefore deem petitioner to have conceded that the plan as originally adopted did not qualify. 4. The provisions violating sec. 401(a) need not have an effect on the plan's operation for the plan to be disqualified. See Tionesta Sand & Gravel, Inc. v. Commissioner,73 T.C. 758, 763-764 (1980), affd. without published opinion 642 F.2d 444↩ (3d Cir. 1981). 5. SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS. * * * (b) CERTAIN RETROACTIVE CHANGES IN PLAN. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satify such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period. ↩
6. We note that, unlike the two other items, in the body of respondent's letter which are marked with boxes to be checked, the wording accompanying the box that was checked did not mention that the material submitted by petitioner was being returned. See p. 3, supra.↩
7. That section provides: (3) Instructions to taxpayers. (i) If an applicant for a determination letter does not comply with all the provisions of this paragraph, the district director, in his discretion, may return the application and point out to the applicant those provisions which have not been met. If such a request is returned to the applicant, the 270 days period described in section 7476(b)(3)↩ will not begin to run until such time as the provisions of this paragraph are complied with. 8. The same analysis is applicable to the comparable statement in respondent's November 12, 1981 letter. ↩
9. The Sixth Circuit Court of Appeals, to which an appeal in this case would lie, has raised a question as to the precedential value of Mitchell Offset Plate Service, Inc. v. Commissioner,53 T.C. 235 (1969), but we note that it did so in the context of a question as to jurisdiction. Miller v. United States,784 F.2d 728, 731↩ (6th Cir. 1986). Such a question is not involved herein. 10. In Miller v. United States, supra,↩ respondent produced such evidence. Petitioner has conceded non-receipt by respondent only for purpose of argument. 11. We can only speculate as to why, given the particular facts and circumstances, respondent did not exercise his discretion and extend the remedial period pursuant to his authority as set forth in sec. 1.401(b)-1(e), Income Tax Regs.↩