HELEN S. LEATHER, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leather v. Commissioner
Docket No. 11185-90
United States Tax Court
T.C. Memo 1991-534; 1991 Tax Ct. Memo LEXIS 583; 62 T.C.M. (CCH) 1087; T.C.M. (RIA) 91534; October 28, 1991, Filed *583 Decision will be entered for the respondent. Kenneth R. Moeller and Steven W. Phillips, for the petitioner. Doreen M. Susi, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 9,227, $ 5,597, and $ 3,360 in petitioner's Federal income taxes for 1986, 1987, and 1988, respectively. The deficiencies resulted from disallowance of claimed S corporation losses. The issue for decision is whether a timely election on Form 2553 was filed on behalf of the corporation. If we find that such an election was filed, we must decide whether the statute of limitations bars assessment against petitioner with respect to the S corporation losses. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Tucson, Arizona, at the time the petition was filed. Articles of incorporation for Flexible Ink, Inc. (the corporation) were filed on June 19, 1986. Petitioner was the president and sole shareholder of the corporation. At the suggestion of petitioner's daughter, Leslee Hippert (Hippert), a practicing attorney, petitioner *584 decided that the corporation should elect S status. On July 19, 1986, Hippert prepared a Form 2553, Election by a Small Business Corporation, for the corporation. Petitioner and Hippert met for lunch, at which time petitioner signed the Form 2553 in her capacity as president and sole shareholder. The Form 2553 signed by petitioner did not contain an employer identification number; the words "Applied for" were inserted in the box on the form for the employer identification number. On July 23, 1986, after making a copy of the signed Form 2553 for her records, Hippert placed the original form in an envelope with a typewritten address to the Internal Revenue Service, Ogden, Utah. She weighed the envelope and placed postage on the envelope containing the Form 2553 using a postage meter in her law office. She placed a yellow adhesive notepaper on the retained copy and wrote "mailed 7/23/86" on the adhesive notepaper. Hippert then put the envelope containing the original Form 2553 on a built-in shelf in the back office next to the postage meter. If outgoing mail from Hippert's law firm was ready before the usual time that the United States Postal Service employee delivered mail to *585 the office, it was placed at the office's receptionist desk between a client card file box and a stapler in order to be taken by the postal employee when the mail was delivered. Outgoing mail that was prepared after the postal employee had visited the office was collected on the built-in shelf in the back office and taken to the mailbox on the corner of Church and Alameda Streets in Tucson by 5:30 each night by one of the secretaries in the office. When a Form 2553 is received by the Internal Revenue Service Ogden Service Center, the Receipt and Control Branch runs the envelope through a composite mail processing machine that opens the envelope. The envelopes are then sorted into different trays and taken into an extracting unit, where employees manually extract the contents at a "tingle" table. The "tingle" table contains a light to "candle" the envelope to ensure that there are no other documents left in the envelope. Once the envelopes have been completely searched and the documents retrieved, the Forms 2553 are batched and taken to the Entity Section at the Service Center. At the Entity Section, a tax examiner reviews the Forms 2553 for completeness and timeliness. The *586 examiner places a transaction code 090 on the taxpayer's master file to reflect that the taxpayer has an accepted and valid S election. Once a transaction code 090 is placed on the Form 2553, a computer-generated Form CF-5147, with a Document Locator Number, is created. The Form CF-5147 is attached to the front of the Form 2553. Once the Service Center has accepted a Form 2553 as a valid election, a Form 385-C letter is sent to the taxpayer. The Form 2553 is retained by the Service Center for 6 weeks and then shipped to the Federal Records Center in Denver, Colorado, where it is retained for 75 years. If a Form 2553 received at the Ogden Service Center did not contain an employer identification number, the tax examiner would search the computer master file to see if the corporation had been assigned such a number. If an employer identification number had been assigned and the Form 2553 was timely and complete in every other aspect, the election would be approved. The examiner would write the assigned employer identification number on the form, place transaction code 090 on the form, and generate a Form 385-C letter to the taxpayer. On May 5, 1987, the corporation filed a Form *587 1120S for the calendar year 1986. The Form 1120S reflected a loss of $ 33,583. Because the Internal Revenue Service Center records did not reflect an election on file, on July 16, 1987, a letter was sent to the taxpayer asking for a Form 2553. Because no response was received from the corporation, on September 26, 1987, the return filed by the corporation was converted from a Form 1120S to a Form 1120 on the records of the Internal Revenue Service Center. Forms 1120S were filed by the corporation on April 13, 1988, and April 6, 1989, for the calendar years 1987 and 1988, respectively. Each of these returns reported a loss. Because no Form 2553 was reflected on the records of the Internal Revenue Service Center, the Forms 1120S were converted to Forms 1120 on the Service Center records. Petitioner filed individual income tax returns for 1986, 1987, and 1988. On each of these returns, she claimed a loss passed through from the corporation. Separate statutory notices for 1986, 1987, and 1988 were sent to petitioner on April 13, 1990, April 13, 1990, and May 4, 1990. Each notice adjusted petitioner's taxable income by disallowing the loss claimed with respect to the corporation. *588 These adjustments were made within 3 years of the dates on which the corporation's returns for 1986, 1987, and 1988 were filed. On or about July 3, 1989, petitioner received a letter from the Internal Revenue Service Center. The letter informed the corporation that the Form 1120S for the calendar year 1988 could not be processed because there was no record of a Form 2553. In July 1989, petitioner completed and filed a new Form 2553. On August 9, 1989, the Service Center sent a letter accepting the corporation's S election effective January 1, 1990. The letter contained the corporation's employer identification number and was sent to petitioner's address; it was addressed to two individuals unrelated to petitioner or to the corporation. The Internal Revenue Service has no explanation for the error in the name of the addressee. A search of the Internal Revenue Service Center files disclosed no Form 2553 for the corporation prior to the Form 2553 sent by petitioner in July 1989. OPINION The parties each point to lapses in the other's procedures and speculate as to how the Form 2553 prepared and signed by petitioner in July 1986 could have been lost. The controlling circumstance *589 in this case, however, is that there is no evidence that the envelope containing the Form 2553 was actually deposited in the United States mail. As petitioner acknowledges, she cannot supply the Court "with any precedent in which a taxpayer has successfully used habit evidence to prove delivery of a S Election to the Service." In the absence of tangible evidence of mailing, petitioner cannot bring herself within the holdings of Mitchell Offset Plate Service, Inc. v. Commissioner, 53 T.C. 235 (1969), and similar cases where the testimony established the time, place, or manner of deposit of the form in the United States mail. As the parties argue in their briefs, there are numerous cases involving the presumption of official regularity, e.g., United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984), and the presumption of delivery arising out of proof of mailing, e.g., Estate of Wood v. Commissioner, 92 T.C. 793 (1989), affd. 909 F.2d 1155 (8th Cir. 1990). In Coleman v. Commissioner, 94 T.C. 82 (1990), the Court concluded that habit evidence, an incomplete Form 3877, and other documentary *590 evidence were sufficient to prove the date a notice was mailed by the Internal Revenue Service. The Court concluded that the taxpayers had failed to prove that the notice of deficiency in question had been mailed later than the date that it bore. The disputed item in that case, however, had actually been delivered, and there was no dispute that it actually had been mailed. By contrast, there is no evidence here that the Form 2553 prepared in July 1986 was delivered, and respondent has presented evidence that the form was not delivered. Whereas in cases such as Coleman v. Commissioner, 94 T.C. 82 (1990), the determinative fact is mailing by a particular date, a Form 2553 must be filed to be effective. Compare sec. 6212(a) and sec. 1.1372-2(a), Income Tax Regs.; see Combs v. Commissioner, T.C. Memo 1989-206, affd. without published opinion 907 F.2d 151 (6th Cir. 1990). Filing requires delivery. Proof of mailing, at most, raises a rebuttable presumption of delivery, which will be sufficient only in the absence of evidence of nondelivery. See Estate of Wood v. Commissioner, 92 T.C. 793, 798-799 (1989), *591 affd. 909 F.2d 1155 (8th Cir. 1990). In this case, there can be no presumption of delivery because there is no direct proof of mailing. This case is thus indistinguishable from Parkin v. Commissioner, T.C. Memo 1986-59, and Ober v. Commissioner, T.C. Memo 1980-513, where habit evidence was held insufficient to establish mailing. Regardless of the number of details presented by petitioner about the preparation of the Form 2553, she has fallen short of the crucial step -- actual deposit in the United States mail. We recognize that the result may seem unfair to petitioner and that documents are lost at the Internal Revenue Service Center. Petitioner, however, is seeking the benefit of special statutory provisions that are dependent on timely filing of a Form 2553. See Pestcoe v. Commissioner, 40 T.C. 195, 198 (1963); Zalewski v. Commissioner, T.C. Memo 1988-340. The burden of proving that the S election was made by the corporation must fall on her. She has failed to satisfy that burden. She may not deduct the losses claimed in 1986, 1987, or 1988 with respect to the corporation. *592 Decision will be entered for the respondent.